IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TIMOTHY N.,[1]

                Plaintiff,

      v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

Case No. 3:25-cv-00994-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Timothy N. ("Plaintiff") filed this appeal challenging the Commissioner of Social

Security's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB")

under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. The Court has jurisdiction

pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the Court affirms the

Commissioner's decision because it is free of harmful legal error and supported by substantial

evidence.

///

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party.

PAGE 1 – OPINION AND ORDER

## STANDARD OF REVIEW

"As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A federal court's review is limited because "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Id.* (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Adhering to this principle, courts "follow three important rules" in reviewing social security determinations. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

First, courts "leave it to the [agency] to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler*, 775 F.3d at 1098). Second, courts "will 'disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098). Third, if the agency "'commits legal error, [courts] uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) ("And even where this modest [substantial evidence] burden is not met, [courts] will not reverse an [agency] decision where the error was harmless." (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by regulation as recognized in Farlow v. Kijakazi*, 53 F.4th 485, 487 (9th Cir. 2022))).

///

PAGE 2 – OPINION AND ORDER

**BACKGROUND**

**I.      PLAINTIFF'S APPLICATION**

Plaintiff was born in 1969, making him fifty-one years old on April 25, 2021, the alleged

disability onset date. (Tr. 156, 165.) Plaintiff has a master's degree and past relevant work as a

collection clerk and tax preparer. (*Id.* at 121, 135, 149, 310.) In his DIB application, Plaintiff

alleges disability due primarily to dysphonia, depression, anxiety, and fatigue.[2] (*Id.* at 112, 156,

165.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and

on May 8, 2023, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").

(*Id.* at 110.) On January 12, 2024, Plaintiff and an impartial vocational expert ("VE") appeared

and testified at a telephonic hearing held before an ALJ. (*Id.* at 131-54.) On April 30, 2024, the

ALJ issued a written decision denying Plaintiff's application. (*Id.* at 110-23.) On April 8, 2025,

the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the

final decision of the Commissioner. (*Id.* at 1-6.) Plaintiff now seeks judicial review of that

decision.

**II.     THE SEQUENTIAL PROCESS**

A claimant is considered disabled if he or she is unable to "engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment

---

[2] "[T]o be eligible for DIB, a claimant must prove continuous disability that began on or before the date last insured[.]" *Hasji v. Kijakazi*, No. 21-15319, 2023 WL 6458648, at *1 (9th Cir. Oct. 4, 2023) (first citing 42 U.S.C. § 423(a)(1)(A), (c)(1); then citing 20 C.F.R. § 404.131; and then citing *Flaten v. Sec'y of Health & Hum. Servs.*, 44 F.3d 1453, 1459 (9th Cir. 1995)); *see also Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (noting that "only disabilities existing before [the] date last insured establish entitlement to [DIB]" (citing *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (per curiam))). Accordingly, to be eligible for DIB, Plaintiff must prove continuous disability that began on or before his date last insured of June 30, 2027. (Tr. 110.)

PAGE 3 – OPINION AND ORDER

which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011) (citation omitted). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

To establish a "prima facie case of a disability," a claimant must demonstrate "at steps one through four of the sequential evaluation process that she suffers from a severe impairment that prevents her from doing any work she has done in the past, or that she has a severe impairment and has no relevant past work[.]" *White v. Kijakazi*, 44 F.4th 828, 833 (9th Cir. 2022) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). If the claimant does so, "[t]he burden then shifts to the Commissioner at step five to establish that the claimant can perform a 'significant number[]' of jobs in the national economy given the claimant's physical and mental limitations, age, education, and work experience." *Id.* (first quoting 20 C.F.R. § 416.960(c)(2); and then citing *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)). "If the Commissioner meets [his] burden, the claimant has failed to establish disability." *Thomas*, 278 F.3d at 955 (simplified).

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 110-23.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 25, 2021, his alleged disability onset date. (*Id.* at 112.) At step two,

PAGE 4 – OPINION AND ORDER

the ALJ concluded that Plaintiff suffered from the following severe, medically determinable impairments: "[D]epression, anxiety, [and] dysphonia[.]" (*Id.*) At step three, the ALJ determined that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.* at 114.)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform a "full range of work at all exertional levels," subject to these limitations: (1) Plaintiff cannot be "required to speak more than [sixty] minutes during the course of an eight hour day," (2) when Plaintiff is "required to speak, the noise level can be no greater than quiet," and (3) Plaintiff can "perform simple, routine tasks, and make simple work-related decisions." (*Id.* at 115.) At step four, the ALJ concluded that Plaintiff has no past relevant work experience. (*Id.* at 121.) At step five, the ALJ determined that Plaintiff was not disabled because a significant number of jobs existed in the national economy that he could perform, including work as a hospital cleaner. (*Id.* at 122.)

## DISCUSSION

Plaintiff advances a single assignment of error in this appeal. (*See* Pl.'s Opening Br. at 1, 7-10, ECF No. 12.) Specifically, Plaintiff argues that the ALJ erred by formulating an RFC that failed adequately to capture his moderate limitations in concentration, persistence, and pace. (*Id.*) As explained below, the Court finds that the ALJ's decision is free of harmful legal error and supported by substantial evidence in the record. The Court therefore affirms the Commissioner's decision.

## I.    APPLICABLE LAW

"The ALJ may meet his burden at step five by asking [the VE] . . . a hypothetical question based on medical assumptions supported by substantial evidence in the record and reflecting all the claimant's [credible] limitations, both physical and mental[.]" *Hill v. Astrue*, 698

PAGE 5 – OPINION AND ORDER

F.3d 1153, 1161 (9th Cir. 2012) (first citing *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009); then citing *Thomas*, 278 F.3d at 956; and then citing *Desrosiers v. Sec'y of Health & Hum. Servs.*, 846 F.2d 573, 578 (9th Cir. 1988) (Pregerson, J., concurring)); *cf. De Botton v. Colvin*, 672 F. App'x 749, 751 (9th Cir. 2017) ("[B]ecause the ALJ posed a hypothetical question to the [VE] . . . that contained all of [the claimant's] credible limitations, the [VE's] . . . testimony was substantial evidence for the ALJ's findings." (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004))). "If a [VE] . . . hypothetical does not reflect all the claimant's limitations, then the [VE's] testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Id.* at 1162 (quoting *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993)).

## II.    ANALYSIS

Plaintiff argues that in formulating the VE hypothetical, the ALJ failed adequately to account for his moderate limitations in concentration, persistence, or pace. (Pl.'s Opening Br. at 1, 7-10.)

### A.    Medical Opinion Evidence

#### 1.    State Agency Psychological Consultants

The state agency psychological consultants, Kevin Santulli, Ph.D. ("Dr. Santulli") and Winifred Ju, Ph.D. ("Dr. Ju"), reviewed Plaintiff's records and completed psychiatric review technique ("PRT") forms on July 22, 2022, and April 17, 2023, respectively. (Tr. 159-61, 169-70.) Drs. Santulli and Ju both agreed that Plaintiff suffers from only "[m]ild" limitations in concentration, persistence, and pace. (*Id.* at 160, 169.) Dr. Santulli added that Plaintiff's recent mental status exams were "unremarkable" and suggested that Plaintiff was "doing fairly well," "manages [his] healthcare," and "interacts appropriately with providers," Plaintiff's "mental functioning is intact," and there was no evidence of "deterioration . . . in mental functioning

PAGE 6 – OPINION AND ORDER

resulting in [inpatient] or [emergency room] visits." (*Id.* at 160-61.) Dr. Ju similarly noted that

Plaintiff exhibited "good concentration, attention, and cognition" during his mental status exams.

(*Id.* at 170.)

###        2.        Consultative Examiner

On April 8, 2023, Oregon Disability Determination Services ("DDS") referred Plaintiff to

Jessica Bentura-Jimenez ("Bentura-Jimenez"), a psychiatric mental health nurse practitioner

("PMHNP"), for an assessment. (Tr. 1221-31.) Bentura-Jimenez's assessment consisted of a

clinical interview, mini-mental status exam, and review of records that she received from DDS

and Plaintiff's treating PMHNP, Daniel Schroeder ("Schroeder"), prepared. (*Id.* at 1221-22,

1230.)

Like Schroeder, Bentura-Jimenez diagnosed Plaintiff with major depressive disorder and

a generalized anxiety disorder. (*Id.* at 1229; *cf. id.* at 1258.) Overall, Bentura-Jimenez's

impression was that although Plaintiff "suffers from symptoms of major depressive disorder and

generalized anxiety disorder," Plaintiff's "mental ability to perform work-related tasks is intact"

and Plaintiff exhibited "no cognitive impairment as evidenced by [his] cognitive testing and

evaluation[.]" (*Id.* at 1229.) Bentura-Jimenez did "not see evidence" that Plaintiff's "mental

health or cognition would interfere with [his] ability to perform workplace functions."[3] (*Id.*)

### B.        ALJ's Decision

Before turning to the medical opinion evidence, the ALJ explained why she discounted

Plaintiff's symptom testimony and determined that the record as a whole, including, but not

---

[3] Bentura-Jimenez's opinion appears to include a typographical error. (*See* Tr. 1229, stating in accordance with other findings that Plaintiff's "level of independence remains high" and his "symptoms do not impact [his] ability to complete all activities of daily living on [his] own," but also stating that he is "not capable of attending to all activities of daily living on [his] own").

limited to, Bentura-Jimenez's psychological assessment, supported the ALJ's finding that Plaintiff suffers from moderate limitations in concentration, persistence, and pace but remains "capable of performing simple tasks and making simple work-related decisions." (*See* Tr. 115-18, evaluating the "'paragraph B' criteria" before Plaintiff's testimony and RFC and finding that Bentura-Jimenez's exam and observations "strongly suggest[ed]" that Plaintiff was "capable of reliably performing simple tasks at a fulltime job and would not have other limitations in mental work abilities" (citing Ex. 12F, i.e., Tr. 1219-31)). Plaintiff does not challenge the ALJ's evaluation of his testimony, nor does he challenge the ALJ's evaluation of the medical opinion evidence, including the opinions discussed below. (*See* Pl.'s Opening Br. at 1-10, arguing only that the RFC fails adequately to account for the ALJ's findings on the Paragraph B criteria, in particular the finding that he suffers from moderate limitations in concentration, persistence, or pace).

After evaluating Plaintiff's testimony, the ALJ turned to the medical opinion evidence. (Tr. 119-21.) With respect to Plaintiff's mental impairments and related limitations, the ALJ first addressed the opinions of the state agency psychological consultants, Drs. Santulli and Ju. (*Id.* at 120.) The ALJ found Drs. Santulli and Ju's opinions "not persuasive." (*Id.*) The ALJ acknowledged that Drs. Santulli and Ju's opinions were "partially support[ed]" by evidence reflecting that Plaintiff was "doing fairly well in terms of managing his mental symptoms" and exhibited "normal cognitive functioning (i.e., intact memory, good concentration)," all of which suggested that Plaintiff's "mental symptoms do not cause more than mild interference in mental functioning." (*Id.*) The ALJ, however, explained that Plaintiff also reported "increased anxiety and later depression after August 2022" and his treating "psychiatric nurse," Schroeder, assessed "moderate anxiety and depression . . . [during] most appointments[.]" (*Id.*, citing Ex. 14F, i.e.,

PAGE 8 – OPINION AND ORDER

Tr. 1255-1360.) Thus, in formulating Plaintiff's RFC, the ALJ "considered" Schroeder's "description of moderate symptoms" because it suggested that Plaintiff's "symptoms could cause some interference with his ability to reliably perform more than simple tasks at a fulltime job[.]" (*Id.*; *cf.* at 118, noting that the ALJ previously found "strong[]" evidence that Plaintiff could still "reliably perform[] simple tasks at a fulltime job and would not have other limitations in mental work abilities").

Unlike Drs. Santulli and Ju, the ALJ found Bentura-Jimenez's opinion "somewhat persuasive." (*Id.* at 120.) Significantly, the ALJ explained that Bentura-Jimenez's opinion was "somewhat vague" because although she found that Plaintiff was capable of performing "work related tasks, . . . she did not comment on the complexity of tasks" that Plaintiff "could perform or his ability to interact appropriately with others and respond to changes in a routine work setting." (*Id.*) The ALJ further explained that Bentura-Jimenez's opinion was consistent with (1) her mental status exam, which demonstrated that Plaintiff "showed no signs of significant limitations in concentration or memory," (2) her observations that Plaintiff was "independent in almost all activities of daily living" and "g[ot] along well with others when he worked," and (3) other medical providers' mental status exams, which reflected that Plaintiff exhibited "intact attention span and memory." (*Id.*, citing Ex. 12F at 3-11 & Ex. 14F, i.e., Tr. 1221-25, 1255-1360.)

## C.    Disposition

Plaintiff fails to demonstrate that the ALJ committed harmful error in formulating his RFC.

It is important to consider that "an ALJ evaluates Paragraph B criteria to determine if the severity of the claimant's mental impairment meets or is medically equal to the criteria of a listed impairment." *Kimberly A. v. Kijakazi*, No. 2:20-cv-01802-SB, 2022 WL 19203, at *5 (D. Or. Jan.

PAGE 9 – OPINION AND ORDER

3, 2022) (simplified). In other words, "[t]he limitations identified in the Paragraph B criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps [two] and [three] of the sequential evaluation process." *Id.* (citation omitted); (*cf.* Tr. 115, stating the same). By contrast, in formulating a claimant's "mental RFC assessment" at subsequent steps of the sequential evaluation process, an "ALJ is required to perform a more detailed assessment by itemizing various functions contained in the broad categories found in [P]aragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [state agency psychological consultants'] PRT[ forms.]" *Kimberly A.*, 2022 WL 19203, at *5 (simplified).

Consistent with this understanding, courts have recognized that "[w]hile similar evidence may be used in both assessments of [a claimant's] mental impairments, they are distinct, and limitations assessed in the context of the paragraph B assessment are not necessarily transferable to the more detailed assessment required when formulating the RFC." *Id.* (quoting *JW U.C. v. Comm'r of Soc. Sec.*, No. 2:19-cv-00090, 2019 WL 3451515, at *2 (W.D. Wash. July 31, 2019)). Thus, "the question is not whether the ALJ's paragraph B findings are consistent with the RFC, but whether the ALJ has provided an adequate explanation for the mental limitations contained in the RFC." *Id.* (citation omitted).

As relevant here, an ALJ's "finding that an individual has 'moderate' limitations in the paragraph B criteria domains does not require the ALJ to assess a specific degree of functional limitation in the RFC." *JW U.C.*, 2019 WL 3451515, at *3 (first citing *Collingswood-Bonse v. Colvin*, No. 6:13-01646-AA, 2015 WL 853063, at *5-6 (D. Or. Feb. 24, 2015); and then citing *Phillips v. Colvin*, 61 F. Supp. 3d 925, 940 (N.D. Cal. 2014)); *see also Kimberley A.*, 2022 WL

PAGE 10 – OPINION AND ORDER

19203, at *6 (reflecting that this Court previously quoted the same passage from the *JW U.C.* decision).

Further, "[a]n 'ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.'" *Martinez v. Bisignano*, No. 24-4520, 2025 WL 2364595, at *1 (9th Cir. Aug. 14, 2025) (quoting *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015)); *see also Floe v. O'Malley*, No. 23-35589, 2024 WL 4601594, at *1 (9th Cir. Oct. 29, 2024) ("The ALJ found each medical opinion persuasive and appropriately translated the assessments of [the claimant's] moderate mental impairments into the [RFC.]" (citing *Rounds*, 807 F.3d at 1006)). An ALJ does not commit harmful error where, as here, she formulates an RFC that is consistent with (or more restrictive than) the medical opinion evidence that she found persuasive, which Plaintiff does not challenge on appeal. *See Martinez*, 2025 WL 2364595, at *1 ("[The claimant] contends that the ALJ [assigned some weight to but] failed [adequately] to incorporate [a provider's] assessed limitations into his [RFC.] . . . [This] argument fails because [the provider's] medical opinions about the need for reinstruction and redirection are entirely consistent with the non-exertional limitations identified in the ALJ's RFC. An RFC that articulates a capacity 'to perform simple, routine, repetitive tasks' adequately reflects medical opinions identifying mild and moderate mental limitations." (quoting *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008))); *cf. Jeffrey G. v. Kijakazi*, No. 6:23-cv-00283-MK, 2024 WL 414422, at *5 (D. Or. Feb. 5, 2024) (explaining that the authorities upon which the Commissioner relied were "distinguishable" because they "only applie[d] if the [ALJ's RFC] determination is consistent with the restrictions identified in the medical evidence," which was "not the case [t]here") (simplified).

///

PAGE 11 – OPINION AND ORDER

Here, Drs. Santulli and Ju agreed that Plaintiff suffers from only "[m]ild" limitations in concentration, persistence, and pace and the ALJ found Drs. Santulli and Ju's opinions unpersuasive because Plaintiff suffered from a greater degree of limitation. (Tr. 120, 160, 169.) Although Drs. Santulli and Ju's opinions were consistent with evidence that Plaintiff was "doing fairly well in terms of managing his mental symptoms" and exhibited "normal cognitive functioning (i.e., intact memory, good concentration)," all of which suggested that his "mental symptoms do not cause more than mild interference in mental functioning," the ALJ "considered" Schroeder's consistent "description of moderate symptoms" in formulating the RFC because Schroeder's description suggested that Plaintiff's "symptoms could cause some interference with his ability to reliably perform more than simple tasks at a fulltime job[.]" (*Id.* at 120.)

Significantly, however, the ALJ determined that this "interference" would not prevent Plaintiff from reliably performing simple, routine tasks and making simple work-related decisions and Plaintiff fails to challenge this finding on appeal. (*See id.* at 117, reflecting that the ALJ explained that the record evidence, including the symptom testimony that she discounted, supported her finding that Plaintiff is "capable of performing simple tasks and making simple work-related decisions"; *id.* at 118, demonstrating that the ALJ found that Bentura-Jimenez's exam and observations "strongly suggest[ed]" that Plaintiff is "capable of reliably performing simple tasks at a fulltime job and would not have other limitations in mental work abilities" and that her evaluation of Plaintiff's symptom testimony supported her conclusion that Plaintiff's "physical and mental symptoms would not prevent him from working at a fulltime job with the limitations accounted for in the [RFC]'"; *id.* at 1115, 1120, finding "somewhat persuasive" Bentura-Jimenez's opinion, including that Plaintiff's "mental symptoms would not preclude him

PAGE 12 – OPINION AND ORDER

from performing work related tasks," and addressing Bentura-Jimenez's failure to "comment on the complexity of tasks" that Plaintiff could perform by formulating an RFC that included specific limitations to "simple, routine tasks" and "simple work-related decisions").

Plaintiff argues that the ALJ committed harmful error here simply because no medical provider, including Bentura-Jimenez, expressly opined that he can perform simple, routine tasks and make simple work-related decisions despite suffering from moderate limitations in concentration, persistence, and pace. (*See* Pl.'s Opening Br. at 8, arguing that this case is distinguishable from *Stubbs-Danielson* and its progeny because the "ALJ did not rely on medical testimony for his assessed limitation" (citing Tr. 120-21)). The Court finds this argument unpersuasive.

Plaintiff fails adequately to address Bentura-Jimenez's opinion, which the ALJ found "somewhat persuasive" and proved to be less restrictive than the RFC that the ALJ formulated. (*See* Tr. 115, 118, 120, 1229.) To be sure, Bentura-Jimenez broadly opined only that Plaintiff possessed an "intact ability to perform work related tasks" without "comment[ing]" or otherwise identifying any restrictions in the "complexity of tasks" that Plaintiff "could perform," as she identified no "evidence that [Plaintiff's] mental health or cognition would interfere with [his] ability to perform workplace functions." (*See id.* at 120, 1221-31, setting forth the ALJ's findings and Bentura-Jimenez's impression based on her psychological assessment, which included a mini-mental status exam, clinical interview, and review of Schroeder's treatment records).

It was appropriate for the ALJ to translate Bentura-Jimenez's findings into specific and slightly more restrictive mental restrictions. *See Slayton v. O'Malley*, No. 22-16883, 2024 WL 637482, at *1 (9th Cir. Feb. 15, 2024) ("The ALJ 'is charged with determining credibility and resolving . . . conflict[s]' between medical evidence." (quoting *Chaudhry v. Astrue*, 688 F.3d 661,

PAGE 13 – OPINION AND ORDER

671 (9th Cir. 2012))); *Hardin v. Kijakazi*, No. 22-16517, 2023 WL 6567890, at *3 (9th Cir. Oct. 10, 2023) ("Inherent in the standard for evaluation of medical evidence is a presumption that ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence.") (brackets omitted) (quoting *Farlow*, 53 F.4th at 488)); *Diedrich v. Berryhill*, 874 F.3d 634, 638 (9th Cir. 2017) ("The ALJ is responsible for studying the record and resolving any conflicts or ambiguities in it.") (citation omitted); *Rounds*, 807 F.3d at 1006 ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC" (citing *Stubbs-Danielson*, 539 F.3d at 1174)).

Accordingly, Plaintiff fails to demonstrate that the ALJ committed harmful error in formulating his RFC and the VE hypothetical that she derived therefrom because it is consistent with her unchallenged evaluation of the medical evidence of record and Plaintiff's symptom testimony. *See Lee v. Berryhill*, 721 F. App'x 604, 607 (9th Cir. 2017) ("[T]he ALJ did not err at step five. The ALJ was only required to incorporate the accepted medical evidence into the residual functional capacity, and he did just that. . . . Moreover, the ALJ accounted for his finding that [the claimant] had moderate difficulties in concentration, persistence, or pace by limiting [the claimant] to 'simple repetitive tasks' because this limitation accorded with the restrictions discussed in the medical record." (first citing *Batson*, 359 F.3d at 1197; and then quoting *Stubbs-Danielson*, 539 F.3d at 1174)).

///

///

///

///

///

PAGE 14 – OPINION AND ORDER

## CONCLUSION

For the reasons stated, Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 15th day of June, 2026.

HON. STACIE F. BECKERMAN
United States Magistrate Judge